## Clarke's Appeal.

1. A husband is entitled to curtesy in the real estate of his wife when he elects to take against her will.

2. Upon marriage the husband becomes entitled to a freehold in his own right in the real estate of his wife; it is a subject upon which a devise of the wife cannot operate.

3. The effect of the Act of May 4th 1855, sect. 1, is to give to the husband an election to take what the law would give him as against her will, or to take his estate by the curtesy in the whole of her real estate.

4. Dickinson *v.* Dickinson, 11 P. F. Smith 405, distinguished. Harris *v.* York Mutual Ins. Co., 14 Wright 341 ; Lancaster Co. Bank *v.* Stauffer, 10 Barr 398, recognised.

October 20th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Orphans' Court of *Erie county:* Of October and November Term 1875, No. 123.

Eliza Clarke, the wife of Joseph S. Clarke, died in May 1872, leaving her husband to survive her, but never having had any children. She died seised of a house and lot in North East, Erie county, but no other estate real or personal. By her will dated March 17th 1868, and proved March 14th 1874, she gave to her " sister Saloma Hebblewhite $1000 in cash;" the residue of her " estate real and personal " she gave to her husband. The executor named in the will renounced. On the 16th of June 1874, the husband filed with the register a paper, refusing to take letters of administration c. t. a., to which was added as follows :—

"And further, said J.·S. Clarke hereby declines accepting under said referred to will, and states his determination to hold his interest in the estate of his said deceased wife, as allowed by the laws of Pennsylvania.                    JOSEPH S. CLARKE.

On the 1st of December 1874, administration c. t. a. was granted to G. W. Colton.

On the 4th of December 1874, Colton petitioned the Orphans' Court for an order to sell the house and lot for the payment of the legacy of Saloma Hebblewhite. The court decreed a sale in accordance with the prayer of the petition. On the 4th of January 1875, the husband presented a petition remonstrating against the sale and praying that the order of sale might be revoked; the court granted a rule to show cause why the prayer of the petition should not be granted. On the 29th of March the court discharged the rule, but stayed the sale until there should be an opportunity for an appeal to the Supreme Court.

J. S. Clarke appealed to the Supreme Court, and assigned the action of the Orphans' Court for error.

*Davenport & Griffith*, for appellant.

[Clarke's Appeal.]

*Benson & Brainerd*, for appellee, cited Acts of April 11th 1848, sect. 7, Pamph. L. 536; May 4th 1855, sect. 1, Pamph. L. 430; 2 Br. Purd. 1006, pl. 14, 1008, pl. 23; Dickinson *v.* Dickinson, 11 P. F. Smith 401.

Chief Justice AGNEW delivered the opinion of the court, January 6th 1876.

A husband is entitled to his curtesy in the real estate of inheritance of his deceased wife, when he elects to take it against her last will. In considering the legislation upon the power of a married woman to devise her real estate, the fact must not be overlooked, that his curtesy estate was one arising at common law in the *lifetime* of his wife, and becoming fixed in him at the instant of her death. It was, therefore, not a subject upon which her devise could operate. As soon as issue is born alive capable of inheriting, the husband becomes tenant by the curtesy initiate, and the estate vested by the birth cannot be determined either by the death or coming of age of the infant. "After issue born" (says C. J. Gibson), "he has a freehold in his own right, for which he is separately bound to do homage to the lord, whose tenant he then becomes, and the wife cannot forfeit for treason:" Lancaster County Bank *v.* Stauffer, 10 Barr 398. Our Intestate Act of 8th April 1833, extended the husband's curtesy by saving to the husband his right as tenant by the curtesy "which (it says) shall take place, although there be no issue of the marriage, in all cases where the issue, if any, would have inherited." Under that Act, the estate becomes initiate immediately without the birth of issue. The act relating to wills, passed on the same day, excepted married women out of the general power conferred of making wills, and provided specially: "That a married woman may, under a power legally created for the purpose, dispose of her real and personal estate by will or appointment-in the nature of a will; and that any married woman may, with the assent or license of her husband, dispose of her personal estate by will." Thus stood legislation when the Married Woman's Act of April 1848 was passed. The 7th section of that act enacted that "any married woman may dispose by her last will and testament of her separate property, real, personal or mixed, whether the same accrues to her before or during her coverture. Provided, that said last will and testament be executed in the presence of two or more witnesses, neither of whom shall be her husband." Thus, over her own personal estate (which was the subject of this legislation), whether real, personal or mixed, she became invested with an absolute power of disposition. It was no longer confined to personalty, nor was the assent or license of her husband required. But the curtesy estate of her husband having its inception in her lifetime, and being fixed *eo instante* at death, was looked upon as not within her power of

[Clarke's Appeal.]

devise, and hence the legislature, in the 10th section, and at the conclusion of the legislation relating to her separate property, made this proviso : " That nothing contained in this act shall be deemed or taken to deprive the husband of his right as tenant by. the curtesy." On this proviso Woodward C. J., remarks : " These words relate not merely to the distribution of her estate after her decease, but are a limitation of all the operative clauses of the act :" Haines *v.* York Mutual Insurance Company, 14 Wright 341. Thus the Act of 1848 carried into full execution its primary thought of securing to a married woman her separate estate of every kind, while it maintained the husband's curtesy, which vested in him by marriage. The intention of the legislature to preserve the curtesy estate, is further found in the subsequent legislation of 1850 and 1863. Thus the Act of 22d April 1850, sect. 20, Pamph. L. 553, declares that " the true intent and meaning of the Act of Assembly to secure the rights of married women, passed the 11th day of April 1848, is and hereafter shall be, that the real estate of any married woman in this Commonwealth shall not be subject to execution for any debt against her husband, or on account of any interest he may have, or may have had therein as tenant by the curtesy, but the same shall be exempt from levy and sale for such debt during the life of said wife. In Harris *v.* The Insurance Company, 14 Wright, *supra,* the effect of this legislation was considered, and it was held that the husband's curtesy during his wife's life was such a vested interest as would support a policy of insurance. Remarking upon the Act of 1850, the Chief Justice said : " For her convenience and benefit, his creditors shall be stayed from proceeding against his estate while she lives. The upshot is a mere stay of execution, not an annihilation of his estate." The same thing was said substantially in a subsequent case, when remarking upon the Act of 1850, and the Act of April 1st 1863, Pamph. L. 212, which enacts that no judgment against a husband, before or during marriage, shall bind or be a lien upon her real estate, or upon the husband's interest as tenant by the curtesy : Woodward *v.* Wilson, 18 P. F. Smith 208. This being the state of legislation at the time of the passage of the Act of 4th May 1855, Pamph. L. 430, there is no difficulty in arriving at its true meaning. Thus a wife had full power, under the Act of 1848, to will away her separate estate, —that which was her own, to the prejudice of her husband; the curtesy estate being an independent and separate freehold, as we have seen, was not the subject of her dominion. If she had millions of personalty, she could. deprive him of it all. But as the law then stood, she could reject his will and elect to take her dower in the real estate, and one-third of his personalty. As was said in Dickinson *v.* Dickinson, 11 P. F. Smith 405, it was to correct this supposed excess of power, and place her on a level with her husband, the Act of 1855 enacted, " That the. power of any married

[Clarke's Appeal.]

woman to bequeath or devise her property by will shall be restricted, as regards the husband, to the same extent as the husband's power to dispose of his property is restricted, as regards the wife, namely : so that any surviving husband may, against her will, elect to take such share and interest in her real and personal estate, as she can, when surviving, elect to take against his will in his estate, or otherwise to take only her real estate as tenant by the curtesy." Thus the legislature clearly intended to put the husband and wife on a par with each other, as to the power of each to will away property from the other, excepting that, as to the husband's independent and pre-existing freehold by the curtesy, he might retain it in lieu of any other estate. The effect was to give to him an alternative election to take the estate the law would give him as against her will, or take his earlier estate by the curtesy in the whole of her real estate. If her estate was chiefly personalty, he would be likely to prefer the former, if realty only, he would choose the latter.

In the present case, the estate being realty only, the husband elected to take his curtesy, which he clearly had a right to do. The learned judge thought so too, but under a misapprehension of certain expressions in Dickinson v. Dickinson, *supra*, he supposed that this court thought otherwise. But that was a case of *devisavit vel non* relative to personal estate, and the questions discussed were the wife's power to make a will of her own property, chiefly personalty, in disherison of her husband, and the effect which a failure to establish the will would have upon the transmission of her estate at law. No question was discussed as to the husband's curtesy, and the expression as to the absolute power of the wife to will away her property from him before the passage of the Act of 1855, had reference only to the property which she controlled, and not to the husband's pre-existing estate by the curtesy.

The absolute decree of sale of the real estate must, therefore, be reversed, but as nothing is intended in this decision to interfere with any proper remedy the legatees under Mrs. Clark's will have to recover her legacy, so as not, however, to disturb the husband's estate by the curtesy, we simply reverse the decree of sale, leaving the Orphans' Court to take such further or other proceeding as may be lawful and proper upon the petition of Saloma Hebblewhite, the legatee.

> Decree reversed with costs to be paid by the appellee, and the record ordered to be remitted to the court below.