ESTATE OF C. A. TEACLE, DECEASED.

APPEAL BY G. A. COOKE ET AL. FROM THE ORPHANS' COURT OF CHESTER COUNTY.

Argued February 10, 1890—Decided February 24, 1890.
[To be reported.]

The plain meaning of § 5, act of June 3, 1887, P. L. 332, conferring upon a married woman the power to dispose of her property by a will "signed by her, . . . . in the same manner as if she were unmarried," is that thereafter the will of a married woman may be executed without the formalities requisite before its passage; she is not enabled thereby to deprive her husband by her will of his curtesy in her real estate.

Statement of Facts.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 86 July Term 1889, Sup. Ct.; court below, number and term not given.

On January 2, 1889, the last will and testament of Catharine A. Teacle, who had died on December 19, 1888, leaving her husband, John Littleton Teacle, surviving her, was duly admitted to probate before the register of wills of Chester county. By said will the testatrix devised the greater part of her real estate to her executors, George A. Cooke and William H. West, upon certain trusts, directing that the income of said trust property, " or so much thereof as the said executors may think proper and expedient under all the circumstances of the case, be appropriated to and for the support and maintenance of" her husband, without liability for his debts.

On February 5, 1889, John Littleton Teacle filed in the court below a written election, declining to take under his wife's will, and electing to take all her real estate as tenant by the curtesy. Thereupon, the executors and trustees appointed by the will filed exceptions to said election, to the following effect:

1. That the husband was not entitled to make such an election.

2. That the testatrix had power to dispose of her property, real and personal, in the same manner as if she had been unmarried, and the husband could not take against her will.

3. That, if entitled to take against the will at all, he would be entitled only to receive the rents and profits of the realty from the trustees under the will, and not to the control and management of the property.

At the argument upon these exceptions, it was agreed and admitted by the parties that John Littleton Teacle and Catharine Teacle, deceased, were married prior to 1887 ; that the real estate of which she died seised was all owned by her before that year, and that no children were born of their marriage.

The court, WADDELL, P. J., after argument, dismissed the exceptions and sustained the election, filing an opinion in part as follows :

J. Littleton Teacle, being dissatisfied with the provisions of his wife's will, declined to accept the same, and elects to take only her real estate, as tenant by the curtesy. The executors deny his right to so elect, and allege that the fifth section of the act of June 3, 1887, which authorizes a married woman to dispose of her property, real and personal, by last will and testament in writing, in the same manner as if she were unmarried, destroys his rights as tenant by the curtesy. Whether or not these exceptions can be sustained, is made to depend, therefore, upon the meaning of this section. Did the legislature intend, by its provisions, to deprive the husband of his rights, as tenant by the curtesy, in the lands of his wife ?

The interest of a husband in the real estate of his wife, is a freehold estate. It vests in him upon the marriage, and becomes fixed at her death. She has no power over it, and cannot deprive him of it, without express authority or necessary implication. Prior to 1833, it was subject to levy and sale under execution, at any time. Since then, however, it is exempt during the lifetime of the wife. But his interest is none the less vested and fixed because protected during his wife's life. His creditors are prevented from acting during the lifetime of the wife, for her convenience and benefit. It is merely a stay of execution, not a destruction of his estate. He is the owner of a freehold, in the real estate of his wife, upon the marriage, although there may be no issue born : Clarke's App., 79 Pa. 376 ; Harris v. Insurance Co., 50 Pa. 341 ; Burson's App., 22 Pa. 164 ; Peck v. Ward, 18 Pa. 509 ; Lancaster Co. Bank v. Stauffer, 10 Pa. 398.

If, then, the husband's tenancy by the curtesy is a vested estate, fixed by the death of the wife, the legislature do not destroy it, when they confer upon a married woman simply the power to dispose of _her_ property by last will and testament in the same manner as if she were unmarried. No doubt the section invested her with absolute power to dispose of her own property ; but it gave her no authority to dispose of what belonged to her husband. We need hardly say that an unmarried woman has no power to dispose of what does not belong to her.

This is the construction given to the act of 1848, upon the same subject matter. By it a married woman had full power

to dispose of her property by will, but it has been held that the curtesy estate, being an independent and separate freehold, was not the subject of her devise, under the terms of that act, and that the proviso to the tenth section would seem not to be necessary: Clarke's Appeal, supra.

The legislature have been careful to avoid all appearance of depriving the husband of any legitimate rights he might have in his wife's estate: Dickinson v. Dickinson, 61 Pa. 405. They have shown a determination to protect the wife in her rights, but not at the expense of the rights of the husband. They have endeavored to place the husband and wife on an equal footing, so far as their estates are concerned, and we should require an explicit declaration of a contrary purpose on their part, before we would say they intended to make such a radical change in the policy of the law. . . . .

The language of the act of 1848, and the act of 1887, conferring the power of disposition, is identical, but the manner is different. By the act of 1848, the will was to be executed in the presence of two witnesses, neither of whom should be her husband. By the act of 1887, it is to be signed by her, or manifested by her mark or cross, made by her at the end thereof, in the same manner as if she were unmarried. Manner is a mode of action, a way of performing or effecting anything. The act authorizes her to dispose of her property by last will and testament, and this will is to be executed in the same mode or manner she would execute one if she were unmarried.

The legislatures of Michigan and New York have enacted statutes similar to our own, relative to the protection of married women in the enjoyment of their property, and they are authorized to dispose of this property by will. The courts of these states, have been called upon to determine whether, under these statutes, the husband has been deprived of his rights, as tenant by the curtesy, and they have held that he has been so deprived. We have been referred to, and have examined these cases, but we find that the statutes of these states are much broader than our act. They authorize a married woman to devise her real estate in the same manner, and with the like effect, as if she were unmarried. Our act of 1887 does not give the devise any effect. It simply authorizes a married

woman to dispose of her property "in the same manner as if she were unmarried," without giving to this disposition of her property, the same effect as would be given to the devise of a single woman. . . . . We think the only object of this legislation was to free the property of the married woman from the debts and control of her husband, during coverture. It was not intended to affect the marriage relation. She is . . and he husband. Whatever rights he therefore had in the real estate of his wife, as tenant by the curtesy, still remain. For these reasons we must dismiss the exceptions and sustain his election.

Thereupon the exceptants took this appeal, specifying that the court erred:

1. In dismissing their exceptions and sustaining the husband's election.

*Mr. William M. Hayes* (with him *Mr. W. R. McAdam, Jr.*), for the appellants:

1. At common law this husband could not have taken as tenant by the curtesy, because there was no issue born alive capable of inheriting. Prior to 1887, he would have been entitled to take, but his right would have been statutory, depending on the act of April 8, 1833, P. L. 316, and not upon any principle of the common law. By §§ 5 and 6 of the Married Person's Property Act of June 3, 1887, P. L. 332, a wife is given full power to dispose of her real estate in the same manner as if she were unmarried, and all acts inconsistent therewith are repealed. In § 5 there are clearly two distinct thoughts; one is, that she may execute her will the same as an unmarried woman, and the other is that she may dispose of her property in the same manner as if she were unmarried. The act contains no provision like § 10 of the act of April 11, 1848, P. L. 537,.excluding from its operation the curtesy of the husband. The words of the act are plain, and the manifest intention of the legislature was, not simply to prescribe the manner of executing a married woman's will, but to give her a power of testamentary disposition as absolute as that of an unmarried woman.

2. Similar acts in other states have been construed as au-

thorizing the exclusion of the husband from his curtesy: Tong
v. Marvin, 15 Mich. 60; Billings v. Baker, 28 Barb. 343.
Our act would seem to be as clear in its purpose as the stat-
utes referred to in the cases cited. Why should not full
scope be given to it, instead of frittering it away by efforts to
construe it in accordance with our notions of how it ought to
have been written? The construction placed upon the act by
one appellee, that the words, " in the same manner as if she
were unmarried," refer to the signing, is an unreasonable one.
Matrimony can make no difference in the signing; whether
married or unmarried, the testatrix must use a signature or a
cross. Before the act, a wife could dispose of her real estate
by will, but the disposition was subject to the husband's right
to take his curtesy, and the act was intended to remedy this.
This is made more clear by the title; it purports to be an act
defining the interests of husband and wife in the estates of each
other. The fact that the marriage of these parties and the
wife's seisin of the real estate antedated the passage of the act,
can make no difference. Notwithstanding those facts, the
legislature had power by the act to take away the husband's
inchoate rights: Moninger v. Ritner, 104 Pa. 298.

*Mr. William Butler, Jr.* (with him *Mr. Windle*), for the
appellee:

1. The construction of the act of June 3, 1887, contended
for by the appellant, not only would destroy the estate of cur-
tesy, but would deprive the husband of all right in his wife's
estate as against her will. Every presumption is against an
intention on the part of the legislature to work this result.
All the legislation upon the subject has manifested a clearly
defined intent to preserve the curtesy, and maintain the recip-
rocal rights of husband and wife in their respective estates:
Act of April 8, 1833, P. L. 316; act of May 4, 1855, P. L. 430;
Clarke's App., 79 Pa. 378. The acts of April 22, 1850, P. L.
553, and April 1, 1863, P. L. 212, by which the sale of the
husband's curtesy during his wife's life is prevented, disclose
no unfriendly spirit toward the right of curtesy, and do not
strike at its existence, even during the life of the wife.

2. The language of the act will not bear the construction
contended for. It speaks only of the manner of executing a

married woman's will, and is entirely silent as to its effect. The words empowering her to dispose of her property by will, do not authorize her to dispose of her husband's curtesy, which is no part of her property, but a freehold estate vested in him before the will has any operation, and of which he is the absolute owner during her life, even since the acts of April 22, 1850, P. L. 553, and April 1, 1863, P. L. 212; Clarke's App., 79 Pa. 376; Harris v. Insurance Co., 50 Pa. 341 ; Burson's App., 22 Pa. 164; Peck v. Ward, 18 Pa. 509; Lancaster Co. Bank v. Stauffer, 10 Pa. 398. The remaining part of the language of § 5 of the act of 1887 simply relieves a married woman from the formalities required by the act of April 11, 1848, P. L. 537, in the execution of her will. This was the spirit and reason of the act, and such an interpretation gives the section a full and beneficial meaning, consistent with former acts : Endlich & Richards on Married Women, § 57; Kneedler v. Leaver, 6 Pa. C. C. R. 556.

. 3. In Michigan and New York laws have been enacted which in express terms invest a married woman with power to devise real estate with the like effect as if she were unmarried, and under this language the courts of those states have necessarily held the estate of curtesy to be at an end, but those decisions are not applicable in the construction of this act. Even if it could be given a construction fatal to the estate of curtesy generally, the act of 1887 would not operate against the claim of the husband in the present case, for the reason that at the time of the passage of the law the identical freehold estate now claimed was vested in him, both the marriage and the wife's acquisition of the real estate having taken place prior to 1887. Under the constitution the legislature was without power to divest this vested estate by any action it might take : Peck v. Ward, 18 Pa. 509; Burson's App., 22 Pa. 167.

PER CURIAM:

Catharine A. Teacle devised all her real estate in trust for her husband during his life. They had no children. J. Littleton Teacle, the husband and the appellee in this case, declined to accept under the will, and claimed the estate as tenant by the curtesy. He gets but a life-estate in either event, but he prefers a life-estate unencumbered by the trust.

His right as tenant by the curtesy must be admitted, unless, as claimed by the appellants, the "Married Person's Property Act" of June 3, 1887, P. L. 332, is in the way.

The fifth section of that act enacts that "a married woman may dispose of her property, real and personal, by last will and testament in writing, signed by her, or manifested by her mark or cross, made by her at the end thereof, in the same manner as if she were unmarried." It was contended by the appellants that this section enables a married woman to dispose of her entire estate by will, wholly ignoring any interest of her husband therein, including his right as tenant by the curtesy. This would be a remarkable piece of legislation if capable of such a construction. It would be the more so, from the fact that the same act provides that a married woman shall not convey or mortgage her real estate without the consent of her husband. The plain meaning of the statute is that hereafter a married woman may execute her will in the same manner as if she were single. Prior thereto the law required certain formalities to be observed in the execution of a married woman's will, which were not necessary in the will of a feme-sole. We think the fifth section was intended to place them upon an equality in this respect. It does not enable her to disinherit her husband.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.