BANK *v.* MORROW.

(*Knoxville.*　October 16, 1897.)

SCHOLARSHIP.　*Not property subject to levy for debt.*

A perpetual scholarship in a college, granted in recognition of a donation thereto, entitling the donor to keep one pupil in the college, free of charge, is not such property as can be taken and sold for debt.

FROM BRADLEY.

Appeal from Chancery Court of Bradley County. T. M. McCONNELL, Ch.

MAYFIELD & SON for Bank.

WEBB & McCLUNG for Morrow.

WILKES, J.　Centenary Female College is a chartered institution for the education of girls, located at Cleveland, Tenn.　Defendant Morrow, who was at the time a man of wealth and public spirit, donated and paid to it $5,000.　About the same time Mr. Hale agreed to give $5,000, but he became afterwards unable to do so.　Thereupon, defendant Morrow assumed and paid this amount also.　The authorities of the college, in grateful acknowledgment

of the gift, bestowed upon each of the parties the right to appoint a pupil to attend the college and receive its benefits and advantages free of charge. This was done by resolution, with suitable laudatory preamble, and is in the following words:

"*Resolved*, That the board hereby gives and grants to James W. Hale and William Morrow each a scholarship perpetual in Centenary College, which shall give the right to place and keep in the college one pupil, who shall have all the advantages of the college (board, furnished room, fuel, lights, tuition in literary department, tuition in musical department, tuition in art department) free of charge."

An addition to the college was erected and named the "Hale and Morrow Wing," and a hearty indorsement of the use of the Bible as a text-book in the college was also expressed. A certified copy of the resolutions were sent to Hale and Morrow. Some years thereafter Dr. Morrow became involved in financial embarrassments, resulting in his insolvency. The complainant bank was one of his creditors, and, in October, 1893, recovered a judgment against him for $8,000, upon which execution issued and was returned *nulla bona*. It then filed its bill against Morrow, and sought to subject to sale for its debt the right or power to appoint to a scholarship vested in him by said proceedings and resolution. The bill proceeds upon the theory that Morrow had paid the entire $10,000, and was entitled to the two scholarships; that they were property rights, and

subject to sale for his debts. An attachment issued, and the officer returned that he had levied it upon the scholarship in the hands of the college, and had notified the president of its board of trust and of the college faculty.

Morrow answered the bill, admitted the judgment and his insolvency, but denied that he had shifted or concealed any of his property to evade his creditors. He set out fully the circumstances of the gift of $5,000, and the subsequent assumption and payment of the amount promised by Hale, of $5,000, and stated that the gifts were unconditional, and the subsequent act of the college in conferring upon him the power of appointment was voluntary, and that, in view of his payments of his own and Hale's gifts, he had been permitted to send two pupils to the college, and that he had exercised this privilege by appointing worthy daughters of poor ministers.

After his answer was made, Hale was made a party by amended bill and publication, and it was alleged that all Hale's rights and privileges in the premises had become vested in Morrow, and hence both scholarships were subject to his debts.

A *pro confesso* was taken against the college and against Hale, and a decree was rendered holding that the scholarships were vested rights in defendant, Morrow; that they had been rightfully attached, and they were ordered to be sold by the Master. They were sold October 5, 1895, the bank buying one of the scholarships for $525, and one James M. Loudon the

15 P—34

other for $500. The sale was reported, but has not been confirmed.

A writ of error was granted to defendant, Morrow, to bring the case to the Supreme Court. The cause has been heard by the Court of Chancery Appeals, and the decree of the Court below reversed, and it is now before us on appeal of complainant, and errors assigned by it.

The question presented is whether this right of appointment vested in defendant, Morrow, is such property as can be taken for debt. It is argued that it is a valuable property right, that it is perpetual, that it is unlimited as to time and unconditional, that it can be disposed of by will or deed or other proper transfer, and that the Courts can divest it out of him and vest it in another.

The only question before us is whether it can be seized for debt and sold at public sale. As to whether it can be revoked by the college authorities, we are not called upon to decide; neither are we called upon to say whether Morrow may devise or give it to another. None of these questions are involved in this case except very remotely and incidentally. We have not been furnished with any authority upon this novel question.

It will be noted that it was not a case of an ordinary scholarship sold by an institution to a purchaser, with right to use or sell and transfer it as he might choose, as is often done by schools. Nor is it a power over or attached to real estate or tan-

gible property. It is not, in any correct sense of the term, an estate. It is merely a privilege or power to be exercised by, and with consent of, the college, and under its rules and regulations. Certainly the power cannot be exercised and appointment made, except under such reasonable rules and requirements as the college might dictate. It must be subject to the charter and regulations which control the institution. Dr. Morrow, subject to these limitations, can appoint whom he pleases. He can decline to appoint altogether. It is a privilege personal to him as long, at least, as he sees proper to exercise or refuse to exercise it. It does not appear that he has attempted to use it for any pecuniary or personal benefit. The appointment had been treated as an act of charity. If it can be sold publicly, any person might buy, and the power of appointment might thus be vested in disreputable hands. We do not think it is such a right as can be seized and sold for debt.

Let the decree of the Court of Chancery Appeals be affirmed.