# Fleming's Estate.

*Trusts and trustees—Insolvent trustee—Will—Election—Right to take against will as an asset.*

A power of election to take under the intestate law is not an asset for the discharge of trust liabilities.

Where the wife of an insolvent trustee creates by her will a spend-thrift trust for her husband, persons interested in the insolvent trust estate cannot by an attachment against the person of the husband, compel him to elect to take against his wife's will.

Argued March 13, 1907. Appeal, No. 47, Oct. T., 1907, by Cochran Fleming, from decree of O. C. Allegheny Co., Sept. Term, 1904, No. 116, awarding an attachment in Estate of John Fleming, deceased. Before FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Reversed.

Petition for attachment.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree awarding the attachment.

*J. M. Swearingen* of *Swearingen, Lewis & Newmyer,* with him *Fleming Nevin,* for appellant.—The right to elect to take against a will is not an asset: Standard Oil Co. v. Hawkins, 74

Fed. Repr. 395; Bliss v. Geer, 7 Ill. App. 612; Clarke's App. 79 Pa. 376; Crozier's App., 90 Pa. 384; Greiner's App., 103 Pa. 89.

*Watson B. Adair*, with him *Arthur L. Over*, for appellees. —Appellant's right to elect to take against his wife's will is assets for the satisfaction of the decree: Kerr v. Day, 14 Pa. 112; Napier v. Darlington, 70 Pa. 64; Horne & Co. v. Petty, 192 Pa. 32; Day v. Ins. Co., 111 Pa. 507; Patterson v. Caldwell, 124 Pa. 455; Bakewell v. Keller, 11 W. N. C. 300; Rutter's App., 8 Atl. Repr. 170; Ager v. Murray, 105 U. S. 126; Pancoast v. Gowen, 93 Pa. 66; Eliot v. Merchants' Exchange, 14 Mo. App. 234; Ritterband v. Baggett, 4 Abb. N. C. (N.Y.) 67.

OPINION BY MR. JUSTICE MESTREZAT, April 22, 1907:

As suggested by the learned judge of the court below, the real question in this case is whether or not a power of election to take under the intestate law is an asset for the discharge of trust liabilities.

John Fleming died in 1870, leaving a will, in which, inter alia, he bequeathed $20,000 to his brother, Cochran Fleming, in trust to pay the income to James P. Fleming for life and then the principal to the latter's children, the petitioners in this proceeding. James P. Fleming having died, Cochran Fleming filed his account, and on December 16, 1904, a decree was entered by the orphans' court of Allegheny county that he pay to James Pressley Fleming and John L. Fleming, the children of James P. Fleming, each the sum of $10,000, the legacies bequeathed them in the will of John Fleming, deceased. Having failed to comply with this decree by paying the legacies, a citation was awarded against Cochran Fleming on November 18, 1905, at the instance of the legatees, to show cause why an attachment should not be issued against him " for contempt for failure to comply with the decree of distribution heretofore made in this case." Subsequently, on May 8, 1906, on petition of the legatees praying the court for the reasons therein set forth " to make an order refusing said attachment," the court entered a decree that the prayer of the petition asking that the attachment be refused " is granted and the attachment refused."

On August 9, 1906, Sarah A. Fleming, the wife of Cochran Fleming, died leaving an estate of $59,000 and by her will, duly admitted to probate, bequeathed the estate to her executor in trust to pay the interest thereon to Cochran Fleming during life without liability for his debts. Shortly thereafter John L. Fleming and James Pressley Fleming presented their petitions to the court below reciting the fact of the death of Cochran Fleming's wife and the bequest to him in her will, also the decree of the court directing him to pay their legacies, and praying the court to "allow a writ of attachment whereby the interest of said Cochran Fleming in the estate of said Sarah A. Fleming may be attached in satisfaction of said decree in accordance with the acts of assembly." An attachment was awarded to which the executor of Sarah A. Fleming answered that Cochran Fleming was not entitled to any interest under the will of the said Sarah A. Fleming which was subject to attachment in his hands.

On October 8, 1906, John L. Fleming and James Pressley Fleming presented their petitions to the court below reciting the bequests to them in the will of John Fleming, deceased, the failure of Cochran Fleming to pay the legacies, the death of Cochran Fleming's wife, and the legacy bequeathed him in her will, averring that Cochran Fleming has no interest in his deceased wife's estate subject to attachment, but that he had the right under the law to elect to take against her will the one-third part of the personal estate of his wife, and averring further that should he die prior to making such election, the right to make the same might be lost and they would take nothing from the attachment executions, "and further showing that said Cochran Fleming has it within his power to secure the payment now or in the near future of a substantial part of said decree and that he has refused to exercise said power, pray your Honorable Court to issue an attachment against the said Cochran Fleming for his noncompliance with tho decree of your Honorable Court." A citation was granted to show cause why the attachment should not issue as prayed for; and subsequently, on January 15, 1907, the court entered a decree awarding the attachment. From that decree we have this appeal.

This statement of the facts is sufficient for an intelligent un-

derstanding of the proceedings and the final decree entered in
the court below. The view we take of the case renders it un-
necessary to determine the power of the court to issue succes-
sive attachments to enforce its decrees for the payment of
money, as we are clearly of the opinion that the learned court
below was in error in awarding the attachment against Cochran
Fleming on the ground that his power of election to take
against the provisions of his wife's will is an asset for the dis-
charge of the legacies bequeathed to the petitioners. It was
solely upon this ground that the attachment was awarded, and
if that reason is not sufficient, the decree awarding the attach-
ment must be reversed. In doing so, however, we must not
be regarded as holding that the court below could not have
entered a decree granting an attachment to enforce obedience
to the primary decree directing the payment of the legacies.
That question does not arise here under the view we take of
the case.

The question involved in this controversy is a very narrow
one and of first impression in this state, and we have been re-
ferred to no decision in any other jurisdiction that discusses
or determines it. We, however, have no difficulty in reaching
a conclusion on the question presented. By the Act of April 8,
1833, P. L. 315, 1 Purd. (12th ed.) 1067, that part of the real
and personal estate of a decedent remaining after the payment
of his debts, "which shall not have been sold or disposed of
by will, or otherwise limited by marriage settlement," is di-
rected to be divided among his widow and children in the pro-
portions named in the statute. The Act of June 8, 1893, P. L.
344, 2 Purd. (12th ed.) 2101, authorizes a married woman to
dispose of her property "in the same manner as if she were
unmarried," saving to her husband his right as tenant by the
curtesy and to take against her will. By section 11 of the act
of 1833, 2 Purd. (12th ed.) 2103, it is provided that a devise
or bequest by a husband to his wife shall be in lieu of her
dower, but shall not deprive the widow of her choice, either
of dower or the estate devised or bequeathed to her. The
power of a married woman to dispose of her property by will
is so restricted by the Act of May 4, 1855, P. L. 430, 2 Purd.
(12th ed.) 2104, "that any surviving husband, may, against
her will, elect to take such share and interest in her real and

personal estate, as she can, when surviving, elect to take against his will in his estates, or otherwise to take only her real estate as tenant by the curtesy."

The learned court below held that the right of election under the statute is assets of Cochran Fleming's estate, and that he was required to exercise the right and take his share of his wife's estate under the intestate laws, so that it might be applied in discharge of the legacies bequeathed by John Fleming to John L. Fleming and James Pressley Fleming, and that by failing to exercise the right accorded to him by the act of assembly, he was in contempt of court and could be compelled by an attachment against his person to elect to take against his wife's will. With this position we do not agree.

The word "assets" is derived from the French assez, meaning sufficient, and originally signified a sufficiency of property to pay the decedent's debts: 11 Am. & Eng. Ency. of Law (2d ed.), 828. Its meaning has been enlarged, and it now signifies any property available for the payment of debts, as the assets of a partnership, of a corporation, of a decedent, or of a bankrupt. The word represents something over which a man has dominion and can transfer with or without a consideration, and may be reached by execution process. It has been held that a general power of appointment is not an interest in property which can be transferred to another, or sold on execution, or devised by will, or a chose in action, and hence does not constitute assets of a bankrupt which passes to an assignee: Jones v. Clifton, 101 U. S. 225, 230. It has also been ruled that a bankrupt, seized for life, with a general power of appointment, with remainder in default of appointment, to the heirs of his body, cannot be compelled by decree in equity to execute the power for his creditors: Thorpe v. Goodall, 17 Ves. Jr. 388. Lord Elden delivering the opinion in the last case said: "if the ground of relief is, that upon principles of equity the bankrupt is to exercise his power, upon those principles the creditors have nothing to do with the power, unless the party chooses to execute it. They cannot compel him to do so."

Turning now to our statutes which declare that an intestacy exists only as to such property as a decedent died seized of and has not disposed of by will, and which give to the hus-

band the interest he has the right to take in the estate of his wife who dies testate, we see that Cochran Fleming, his wife having died testate, " may, against her will, elect to take such share and interest in her real and personal estate " as the laws in cases of intestacy provide.   An election, says Mr. Bispham (Principles of Equity, 5th ed., p. 408), is a choice which a party is compelled to make between the acceptance of a benefit under a written instrument, and the retention of some property already his own, which is attempted to be disposed of, in favor of a third party, by virtue of the same paper.   The husband and wife are on a par with each other as to the power of each to will away property from the other: Clarke's Appeal, 79 Pa. 376; and we have distinctly ruled in numerous cases that the right given by the statute to a widow to elect not to take under her husband's will is purely personal, so much so that in the event of her death without having exercised the right, her heirs or personal representatives cannot make the election : Crozier's Appeal, 90 Pa. 384 ; Jackson's Appeal, 126 Pa. 105; Anderson's Estate, 185 Pa. 174.   We have also held that the right of a widow to retain real or personal property of her deceased husband's estate to the value of $300 is a personal privilege, which she may waive: Davis's Appeal, 34 Pa. 256.

We think that the right of the husband to elect to take against the provisions of his wife's will is simply a personal privilege and is not an asset for the payment of his debts, or a right which he can be compelled to exercise so as to discharge his trust liabilities.   Every sane person of lawful age in this commonwealth has a right to dispose of his property by will, and the policy of the law is to encourage the exercise of that right.   A married woman has now the same right as her husband to devise her property and that right should not be curtailed by the court compelling an unwilling husband to defeat it by an election to take against her will.   His action in the premises is optional with him, but if he wishes to respect the last wishes of his wife as well as carry out the manifest policy of the law he refuses to interfere with the disposition which she makes of her property.   Aside from any sentimental feeling in the matter, the husband should permit the will to stand, thereby recognizing the right of his wife to determine the disposition of her own property.

If the court may compel the husband to take under the intestate laws and against his wife's will, it may, with the same reason and by the exercise of the same authority, compel him to elect to take under the will. The action of the court would then depend in each case upon the interest of the creditor or other party to whom the husband was liable, and would deprive him of his statutory right to make the election. If the husband's interest in his wife's estate under the intestate law was greater than his interest under the provisions of her will, the court at the instance of the creditor would compel the husband to elect to take against the will. If, on the contrary, the interest of the husband under the will should be greater than his interest under the intestate laws, the court would at the instance of the creditor compel the husband to accept the provisions of the will. The election, therefore, would not be a personal privilege of the husband, which this court has declared it to be, but would be a right which the husband's creditor could control as his interest should demand. This would not be an election by the husband but by his creditor. Such was certainly not the intention of the legislature in conferring upon the husband the right of election. Under the act of 1855, the power of the husband and wife to take against each other's will is the same, and we think the right of the court to control the husband's action is inferentially negatived by the fact that the legislature, by the Act of March 29, 1832, P. L. 190, 1 Purd. (12th ed.) 703, authorizes the orphans' court on application of any interested party to cite the widow to make her election. While this authority is conferred on the orphans' court and is frequently exercised, it has never even been suggested that the court has authority, on such application, to direct whether the election should be made to take under the will or against it. The court will compel the widow to elect whether she will accept the provisions of the will or the interest which the intestate laws give, but the statute does not authorize the court to decree which of the two alternatives the widow must select. If, however, the position of the appellees be correct, the court can on such application direct not only that an election shall be made, but also which of the two alternatives must be selected by the widow. In other words, the position of the appellees here is that the husband may be deprived of his per-

sonal right to make an election and may be compelled to elect to take under or against his wife's will solely as his creditor or his cestui que trust may determine; and that if the husband refuses to obey such command, the court will require him to do so or be deprived of his liberty. Such are the consequences of the contention of the appellees and of the position assumed by the orphans' court. It clearly overlooks the property rights of both husband and wife, their unquestioned right, subject to statutory limitations, to dispose of their property by will, and the language as well as the plain intent of the statutory provisions regulating the rights of each in the property of the other when he or she has made a testamentary disposition of it.

It is true, as argued by the appellees, that the husband has an absolute legal right to take against his wife's will, but that is a right, the exercise of which cannot be controlled by a creditor or a cestui que trust or by the court at their instance. It is not, as argued by the appellees, the same right as an option to buy real estate, or an interest in a partnership, or a seat or membership in a stock exchange or board of trade, or any property right acquired by contract. The right thus acquired puts the party in possession of something which is tangible and which by legal or equitable process may be reached and subjected to the payment of the party's indebtedness. It is more nearly analogous to a general power of appointment which, as we have seen, is not an asset for the payment of debts. In the case at bar, it is conceded that no writ, legal or equitable, can grasp the thing or interest in question and utilize it for the benefit of a creditor or a cestui que trust.

We think it was error for the learned court below to award an attachment for the reasons set forth in its opinion, and, therefore, the seventh assignment of error is sustained, and the decree is reversed at the costs of the appellees.