UNION TRUST COMPANY *v.* LILLIE MULLINEAUX,
INDIVIDUALLY AND AS TRUSTEE.
[No. 24, October Term, 1937.]

*Decided November 3rd, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Walter H. Buck* and *R. Contee Rose,* with whom was *Eben F. Perkins* on the brief, for the appellant.

*Columbus K. Oakley* and *Everett J. Buckmaster,* with whom were *Eugene M. Carozza* and *Weinberg & Sweeten* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

When the national bank holiday was declared on March 4th, 1933, there was a savings account, showing a balance of $3680.95, in the Liberty Branch of the Union Trust Company of Maryland, entered in the following form: "In account with Erven Mullineaux, in trust for self and Lillie Mullineaux, joint owners, subject to the order of either, the balance at the death of either to belong to the survivor." On March 21st, 1933, the bank was reopened under restrictions which made only five per cent, or $184.05, of the deposit available in cash, and that amount was withdrawn by Mr. Mullineaux on the same day. There was a credit to the account of $55.80 interest on July 1st, 1933, and the balance appearing as of that date was $3,551.70. In accordance with the plan of reorganization, which became effective on December 18th, 1933, twenty per cent of the account became available in cash, amounting to $710.34, while for the remaining eighty per cent a certificate of deposit and a certificate of beneficial interest in equal amounts of $1,420.68

each were executed. The cash credit of $710.34 was applied by the bank to certain promissory notes on which Mr. Mullineaux was liable as maker or indorser, and the certificates were retained by the bank as collateral security for his additional and similar liability. A deposit of $200 was credited to the account on October 25th, 1934, and this was followed on October 29th by a credit of $1,420.68, being the amount, then made available in cash, of the certificate of deposit held for the benefit of the account under the plan of reorganization. Against the credit balance of $1,620.68 produced by those entries the bank set off the previously unpaid note liabilities of Mr. Mullineaux, aggregating $1,269.60. Among the notes thus paid was one for $202.76, including interest, signed by both Mr. Mullineaux and his wife, described in the deposit account as its joint owners.

Upon the theory that the bank had no right to set off against the account any of the notes to which she was not a party, Mrs. Mullineaux sued the bank to recover the sum of $1,777.18, which it had applied to the notes signed by her husband and not by herself as either maker or indorser. The appeal is from a judgment on the verdict of a jury for the full amount claimed.

The circumstances under which the set-offs were effected by the bank are described in the testimony of Mr. Mullineaux, and of Mr. Mergenthaler, the manager of the Union Trust Company's Liberty Branch. In reference to the item of $710.34, Mr. Mullineaux was asked: "Did you authorize the Union Trust Company to apply that amount of money to any personal indebtedness by you?" He answered: "The only thing Mr. Mergenthaler said to bring the book down, we will get it straightened up. I brought it down and I handed him the book. He handed it back to me; he had discounted the notes. I said, you are not taking those notes off; he said yes, you are liable for the money, we are going to discount the notes. I said, I do not think you are treating me right. That is all I said to him."

The testimony of Mr. Mullineaux then proceeded, in

part, as follows: "Q. Did you authorize him to do that? A. I did not. Q. Did you sign a withdrawal slip? A. I can't say whether I did or not. I can't remember back that far. * * * Q. Did you on October 29th, 1934, or before that date, make a withdrawal of $1269.60? A. I did not. Q. Did you authorize the Union Trust Company to apply that amount of money to any indebtedness owed by you to the bank? A. I don't remember. I don't think I did. If I did they certainly have the record of it. * * * Q. What did you do with the bank book when you took it to the bank? A. I gave it to Mr. Mergenthaler, and Mr. Mergenthaler discounted the notes and handed it back to me with the certificates."

The following questions and answers appear in the record of Mr. Mullineaux' cross-examination: "Q. In any of these conversations did he" (Mr. Mergenthaler) "ever make a demand on you at that time when you came into the bank about the matured notes? A. The only demand he made. He said, bring your book down here, he said, and we will get these notes straightened, and that is all, and I brought that book down. He said we will get this straightened. I brought it down and he discounted the notes. Q. What do you mean discounted the notes? A. Off-set the notes. Q. When he did that, what became of the notes? A. He gave me the notes. Q. He gave you the notes? A. Yes, sir. Q. And then he returned to you the bank book? A. That is right."

From Mr. Mergenthaler's testimony we quote as follows: "On the effective date of the plan of reorganization, $710.34 free cash was applied by the bank to the payment on account of certain notes owed by Mr. Mullineaux to the bank, pursuant to the agreement previously made with Mr. Mullineaux, and the notes which were paid out by this sum were personally delivered by him to Mr. Mullineaux at a later date, but within a reasonable time after the application of the free cash, and Mr. Mullineaux accepted these notes, on all of which he was liable either as maker or endorser. The Certificate of Deposit and Certificate of Beneficial Interest,

each for the sum of $1420.68, which were issued as a part of the plan of reorganization, were held by the bank at the main office and not delivered to either Mr. or Mrs. Mullineaux, pursuant to an agreement with Mr. Mullineaux, as collateral security for his indebtedness. The Certificate of Deposit became available in cash in October, 1934, and on the 29th day of that month the Certificate was cancelled and the full amount thereof entered as a credit to this account. On the same date there was debited to this account $1269.60, which covered in full the remaining notes on which Mr. Mullineaux was liable, both principal and interest. That was done following the bank's agreement with Mr. Mullineaux to pay his notes out when cash became available. The notes were returned to Mr. Mullineaux. The bank book was returned to him. The Certificate of Beneficial Interest was delivered to him * * * without his saying anything at the time."

The balance to the credit of the account after the second set-off on October 29th, 1934, was $351.08. Subsequent withdrawals had reduced the balance to $27.93 when this suit was brought on June 17th, 1936. One of the withdrawals was made by Mrs. Mullineaux personally. The bank book was customarily in her possession, and it, of course, disclosed to her the set-offs now in controversy. But she stated in her testimony that she did not authorize the application of the deposit to her husband's indebtedness. No complaint, as she admits, was ever made by her to the bank, in regard to the set-offs, prior to the institution of this suit.

It was proved that the proper procedure to withdraw funds from such an account as the one now under consideration is for either or both of the joint owners to present the pass book to the bank and sign a withdrawal order. Because that procedure was not strictly followed with respect to the application of the deposits to the payment of her husband's notes, it is contended by the plaintiff that the set-off entries designed to accomplish that purpose were ineffectual to impair her interest in

the bank account as a beneficiary of the trust which the terms of the deposit created. It is not denied that her husband could rightfully have withdrawn from the account sufficient money to pay his notes to the bank, but, in the plaintiff's view, the debit of the notes on the pass book, as presented by him, without the actual withdrawal and return of the sums required for the payment of the notes, should be regarded as wholly nugatory so far as her interest in the account is concerned, especially if, as Mr. Mullineaux testified, he did not authorize the bank to set off the notes against the account.

It is clear that the bank was not entitled to compel the set-offs here disputed. The liabilities represented by the notes and the deposit account were not mutual. The notes were owed by Mr. Mullineaux individually, while the deposit was payable under the terms of the trust which he had declared. Therefore no absolute right of set-off, with respect to the notes and the account, could have been asserted and enforced either by Mr. Mullineaux or by the bank. In *Ghingher v. Fanseen,* 166 Md. 519, 172 A. 75, 79, it was sought by mandamus to require the receiver of an insolvent bank to set off the note of the plaintiff against a savings account entered in his name in trust for himself and his wife, as joint owners, subject to the order of either, the balance at the death of either to belong to the survivor. This court refused to sustain the plaintiff's claim of set-off and said, in the course of its opinion, as delivered by Judge Offutt: "The test of his right to set off his claim against the bank against its claim against him in his own right would be whether he could in his own name sue and recover against the bank on his claim." The opinion thus concludes: "His interest in it" (the deposit) "is dual, that of a trustee and that of a *cestui que trust,* who, if he survives the other beneficiary, will become entitled to so much of the fund as remains in the deposit at that time, and who may withdraw any part or all of said fund upon his own individual order or demand. But until withdrawn by him or by his wife, so much of

the fund as remains in the deposit remains subject to the terms of the trust upon which the deposit was made, for the mere power to withdraw the fund cannot be accepted as equivalent to an actual withdrawal thereof. Since, therefore, Mr. Fanseen's interest in the fund is that of a trustee, it may not be set off against the claim of the bank against him in his personal capacity."

In *People's Bank v. Turner*, 169 Md. 430, 182 A. 314, where the deposit account was entered in the name of two sisters, or survivor, it was decided that a withdrawal of the fund by one of the sisters could not be prevented by the bank on the ground that it was entitled to charge against the account a debt to it which the other sister owed. In the opinion, by Chief Judge Bond, it was said (169 Md. 430, at pages 433, 434, 182 A. 314, 316) : "In the case now considered, the court is not concerned with any question of completion of a gift to one of the two persons, or with a right of survival in the fund. We have no concern with a question of joint tenancy and its incidents. The question is only whether, during the lives of both persons named, the bank was limited in its rights by such interests as both might have under the deposit as it was made. And we find that it was. Whether ownership in the deposit under the entry was joint, or joint and several, in the two sisters, the debt of one could not affect the right of the other. *Cohen v. Karp*, 143 Md. 208, 211, 122 A. 524; *Fidelity & Deposit Co. v. Poe*, 147 Md. 502, 128 A. 465; 1 *Morse, Banks and Banking*, sec. 324."

While in this case the bank could not, as the exercise of a legal right, have set off the individual debt of Mr. Mullineaux against the deposit held for him as trustee, the question to be determined is whether the set-offs actually made, with his participation, under the circumstances described in the testimony, may be successfully disputed by his wife, as the co-beneficiary of the trust, after a prolonged period of apparent acquiescence in the transactions. A prayer offered by the defendant bank which related to that issue was refused by the trial court,

presumably upon the ground, reflected in certain granted instructions, of an omission by the prayer to require a finding that both owners of the deposit account consented to the set-offs without compulsion and with full knowl-edge of their right to object. The presentation of the defendant's theory should not have been restricted by such conditions. There was no evidence in the case that either the plaintiff or her husband acted under compulsion in assenting or submitting to the set-offs, or that they were ignorant of their rights. The pass book was voluntarily taken to the bank, at its request, for the specific purpose of having the "notes straightened," as Mr. Mullineaux testified, and when they had been charged against the account they were delivered to him as effective proof of the fact that the indebtedness represented by them had been extinguished. His retention of the notes to the present time, and the plaintiff's custody and use of the pass book in which the set-offs were entered, and the failure of both to challenge the settlements until this suit was brought nearly twenty months later, prove conclusively their assent to the use of the deposit for the discharge of the husband's debts to the depositary. The effect of such acquiescence upon their rights and the interests of the bank renders unimportant the fact that the satisfaction of the indebtedness was accomplished by charges against the account, and not by the withdrawal and redelivery of funds to produce the same result. The ruling on the defendant's prayer to which we have made special reference must therefore be held erroneous, and, since the undisputed facts in the case would not justify a recovery, the reversal will be without the award of a new trial.

The appeal has been considered on rulings which affect the merits of the case, but the important question, raised by demurrer to the declaration, as to the plaintiff's right to sue for the deposit without the joinder of her husband as trustee and co-owner, must also be decided in the defendant's favor. The decision in *Ghingher v. Fanseen, supra,* is sufficient authority for that conclu-

132

sion. It was there decided in effect that a suit for the recovery of such a trust deposit could not be maintained by one of the co-beneficiaries individually. The additional characterization of the plaintiff as trustee for her husband, as the other joint owner, does not strengthen her position. By the terms of the deposit she is not made a trustee of the fund for any purpose. The demurrer to the declaration should have been sustained.

*Judgment reversed with costs, and without the award of a new trial.*