## MARY H. FAIRFAX *v.* SAVINGS BANK OF BALTIMORE, ET AL.

[No. 62, April Term, 1938.]

*Decided June 14th, 1938.*

138

The cause was argued before BOND, C. J., URNER, OF-
FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON,
JJ.

*Hall Hammond,* for the appellant.

*Thomas M. Jenifer,* with whom were *Walter R. Haile*
and *Jenifer & Jenifer* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

One Mary H. Fairfax was injured on August 30th,
1935, in an automobile accident, and recovered, on June
14th, 1937, a judgment for $5,000 against Howard E.
Brazier, the driver. On October 21st, 1937, an attach-
ment was issued on this judgment, and laid in the hands
of the Savings Bank of Baltimore, garnishee. A second
attachment was issued on December 13th on the judg-
ment, and laid in the hands of Howard E. Brazier as
trustee, garnishee. In each attachment, the garnishee
pled. In the first, Nellie M. Brazier, the wife of Howard
E. Brazier, moved as claimant to quash this writ. The
court at *nisi prius* consolidated the two garnishment pro-
ceedings, which were together submitted on an agreed
statement of fact. The court overruled the motion for a
judgment of condemnation absolute, and granted the mo-
tions to quash, and thereupon entered a judgment in
favor of the garnishees and claimants for costs.

The facts submitted show Annie E. Brazier, the mother
of Howard E. Brazier, to have deposited in the Savings
Bank of Baltimore approximately $3,000 of her own
money in a savings account in the following form: "Annie
E. Brazier, in trust for self and Howard E. Brazier, joint
owners, subject to the order of either, the balance at the
death of either to belong to the survivor." On the death
of the mother on July 4th, 1933, the money became the
property of the son, who, on July 20th, 1933, deposited
with the bank the sum so received in an account desig-
nated No. 21032, in a similar form: "Howard E. Brazier,
in trust for self and Nellie M. Brazier, joint owners, sub-

ject to the order of either, balance at the death of either to belong to the survivor." Nellie M. Brazier was then and has ever since been the wife of Howard E. Brazier. Withdrawals were made from this account until on August 16th, 1937, the balance to the account on that day was $503.75.

On this last mentioned date the husband and wife had a check drawn to them in the sum of $3299.63 which was the net proceeds of a loan to the spouses from the Second National Bank of Towson. The loan was secured by their joint mortgage on property which they owned as tenants by the entirety. The check was endorsed by both payees, and on August 17th, 1937, the wife deposited the amount of the check on their behalf to the said account. The money thus deposited was obtained under these circumstances. Before April, 1935, the husband was the owner in severalty of properties in Baltimore County which yielded him in rents approximately $150 a month. During the month of April, 1935, these properties were transferred so as to put the titles in the said spouses as tenants by the entirety. One of these properties, and another property, which had been owned by the said spouses since 1928, and in which the wife had invested about $4300 of her own funds, were both mortgaged on August 17th, 1937, to the Second National Bank of Towson to secure a loan to them of $5000. The check for this loan was drawn to the order of the mortgagors and by them endorsed and delivered to the attorneys for the mortgagee, who paid off an existing mortgage on one of the parcels conveyed, the taxes due and other charges and expenses, which amounted to $1700.37, and the deduction of these disbursements left said sum of $3299.63 as the net amount due to the mortgagors, which was paid and deposited as heretofore stated. The husband drew out of the account, on October 6th, 1937, the sums of $500 and $3.75, which he applied to the payment of taxes, insurance, interest on mortgages and other obligations due on the properties which are owned by himself and his wife as tenants by the entirety.

The amount to the credit of the account as of the day of trial was $2895.03. Since the attachments were laid the sum of $404.60 was withdrawn by the spouses, with the knowledge and consent of Mary H. Fairfax, the plaintiff, in order to pay the sum of $355 and costs to the said Mary H. Fairfax, who had issued on her judgment against Howard E. Brazier an execution under which the automobile of Howard E. Brazier had been seized and would have been sold unless this sum had been paid.

It will be observed that no question of fraud is involved in this case. So, the attaching judgment creditor may not succeed, unless the money on deposit in a savings bank in the form here stated can be made subject to an attachment against only one of the two named beneficiaries. The broad provision of the Code, art. 9, sec. 10, declares that: "Any kind of property or credits belonging to the defendant, in the plaintiff's own hands, or in the hands of any one else, may be attached: and credits may be attached which shall not then be due."

Within the intendment of the statute, "any kind of property or credits" embraces a beneficial interest in credits or specific sums of money, and may be reached by an attachment laid in the hands of a trustee or third party. *Hodge & McLane on Attachment*, sec. 124. Where there is an express trust by document or will, the wording of the instrument will control, and this rule is particularly applicable in the case of personalty. Thus it becomes necessary to consider the nature of the paper writing and the interests of its beneficiaries. There is no question that, since the decision in *Milholland v. Whalen*, 89 Md. 212, 218, 43 A. 43, a valid and subsisting trust was created by the form of the deposit. The corpus of the trust is the deposit in the particular bank, and the trustee is Howard E. Brazier, and the beneficiaries are Howard E. Brazier and Nellie M. Brazier, his wife. The trust is created and the corpus held for the use and benefit of the beneficiaries jointly during their lives and, at the death of either, the trust to cease and the corpus of the estate remaining to become the

property of the survivor in severalty, with the use or power during the joint lives of the beneficiaries for either independently to determine the trust in whole or in part by the withdrawal, by order on the depositary, of all or a portion of the funds on deposit to the account of the trust. *McDevit v. Sponseller,* 160 Md. 497, 499, 154 A. 140; *Ghingher v. Fanseen,* 166 Md. 519, 530, 172 A. 75.

The debtor beneficiary, therefore, has, during the joint lives of himself and wife the contingent right of survivorship in the trust fund; and the use or power of withdrawal in common with his wife, which either may exercise independently of the other. By the plain language of the declaration of trust the interest of the husband in the corpus of the trust is contingent upon his survival of his wife. So, the interest is uncertain and contingent in the sense that none of the deposit or trust may ever become due and payable to the husband. Such an interest is not subject to attachment as it is not within the scope of section 10. The language of the court in *Safe Deposit & Trust Co. v. Independent Brewing Assn.,* 127 Md. 463, at pages 468, 469, 96 A. 617, is particularly applicable and may be quoted:

"While the language of Code, art. 9, sec. 10, is very broad, and provides that any kind of property or credits belonging to the defendant, in the plaintiff's own hands, or in the hands of any one else, may be attached, it has never been held that it would apply or cover a contingent or uncertain interest in a trust estate such as the one here in dispute.

"In *Smith v. Gilbert,* 71 Conn. 149, 41 A. 284, the Supreme Court of Connecticut held, in a somewhat similar attachment proceedings, that: 'An uncertain interest incapable of just appraisal, and possibly of no value, could not be attached.' The court said: 'When an interest which may be strictly neither goods nor land is nevertheless clearly property, capable of being fairly sold and appraised, which is subject to the debtor's control, and which ought to be responsible for his debts, we say that the policy of the state for two hundred and

fifty years clearly indicates that such interest is attachable property within the meaning of the statutes. But the same reasoning which has induced our courts to place such a construction upon the language of our statutes leads us to the conclusion that the defendant's interest in his father's estate is not attachable within the meaning of the law. While it is unjust that one should keep from his creditors property which can be fairly sold or applied to the satisfaction of his debts, it is equally unjust that a creditor should seize and destroy an interest of his debtor which is so uncertain and contingent that it cannot be fairly sold or appraised. The policy of the law justifies the extension of the right of attachment to property which, though not strictly within the letter, is within the equity of the statute. It does not justify such an extension of that right as will be likely to result in the destruction of a paternal gift which can be of no present value to any one, and may never be of value to the debtor or his assignees.' *Hill v. Boland*, 125 Md. 113, 93 A. 395; *Harris v. Whiteley*, 98 Md. 430, 56 A. 823; *Jordan v. Reynolds*, 105 Md. 288, 66 A. 37; *In re Gardner* (D. C.) 106 Fed. 670; *In re Wetmore* (C. C. A.) 108 Fed. 520; *In re Twaddell* (D. C.) 110 Fed. 145; *Shryock v. Morris*, 75 Md. 72, 23 A. 68; *Humphrey v. Gerard*, 83 Conn. 346, 77 A. 65; *Hayward v. Peavey*, 128 Ill. 430, 21 N. E. 503; *Ducker v. Burnham*, 146 Ill. 9, 34 N. E. 558; *Watson v. Dodd*, 68 N. C. 528."

It is apparent that if the husband had died after the attachment was issued, the judgment creditor would have no right against the funds or corpus, and the wife would receive, use, and enjoy her absolute estate in severalty in all of the personalty. The attaching creditor could not compel the husband as beneficiary to deprive the other *cestui que trust* of the benefit of her right of survivorship by a present appropriation of the whole or any part of the trust fund so held for their benefit. A valid trust may not be diverted from its uses by attachment. The reason is that rights of the husband as a *cestui que trust* are determined by the terms of the deed

of trust in which the equitabe interest of the husband is not several, and may not be made or become several in the husband except if and when so made conformably with the terms of the declaration of trust. Since no event has occurred nor any power been exercised, within the contemplation of the trust, to make either the depositary or the husband as fiduciary liable as debtor to the husband personally in any amount, there are no ascertainable property rights or credits subject to the writs of attachment laid in the hands of the two garnishees. *Supra; Dwight v. Bank of Michigan,* 10 Metc. (Mass.) 58, 61; *Kinsloe v. Davis,* 167 Pa. 519, 31 A. 934, 935; *Poe v. St. Mary's College,* 4 Gill 499, 504; *Balto. & O. R. Co. v. Wheeler,* 18 Md. 372, 379; *Farley v. Colver,* 113 Md. 379, 387, 77 A. 589; *Perry on Trusts* (7th Ed.) sec. 815a; 7 *C. J. S. Attachment,* sec. 72, p. 245; 4 *Am. Juris.* sec. 256, p. 719.

It should be stated that, before the first writ of attachment was issued, the agreed statement of facts discloses that the sum of $3299.63 was the whole amount on deposit to the account. This amount is the identical sum of the net proceeds of the mortgage loan on the real estate which the mortgagors had owned and held as tenants by the entirety. In one of these properties so held the wife had about $4800 of her own private funds. It follows that the whole trust fund is substantially less than the money which the wife had invested in one of the mortgaged properties. Hence, no matter how regarded, the present trust fund represents the proceeds of a loan upon real estate which had been acquired by the tenants by the entirety long before the accident out of which this litigation springs, and by each having contributed to their acquisition out of their several respective personal fortunes. The facts do not bring it within a "tentative trust" as defined in section 58 of the *Restatement of the Law of Trusts,* pp. 181, 182. The settlors are two instead of one, and the interests created in each beneficiary are of equal degree and exist in reference to the same subject matter, or corpus, which is

the united property contributions of each spouse. The beneficiaries and the settlors here intended to make on the day of deposit an irrevocable appropriation of the funds in the manner declared in the terms of the deposit as of the date of the deposit. After its inception, the trust could not be terminated, in whole or in part, except in the manner provided. The fact that the trust could be so ended as to all or part of the fund, by one of the beneficiaries in the exercise of the power conferred on each independently, did not give either complete control. Each possessed the power, but its exercise by one was always in subordination to any prior exercise by the other. Each contributed something, so that in the aggregate thus obtained both might have, and enjoy, in consideration thereof, the new equitable rights and uses and powers as specified in the declaration of trust. *Restatement of the Law of Trusts, sec.* 330 (f) (o).

The power of withdrawal is not joint, as is established by the words of the account, "subject to the order of either." It exists completely in each beneficiary, with the power of separate and independent exercise. It is moreover, a reserved personal right of each, and beyond the control of the other, and, therefore, whether it shall be exercised depends wholly upon the individual will of each severally motivated. A creditor of one cannot make this election, nor compel the debtor to act. Nor may a valid trust, untainted by fraud, be ended at the instance of a subsequent creditor. If so, the established rights of the debtor and his wife, against whom there is no claim, will be swept aside without justification in principle or precedent. The court has had occasion recently to consider the nature and relative rights of the parties in connection with trusts of similar form. While not completely analogous in the facts, the principles established support the conclusions reached on this record. *Ghingher v. Fanseen,* 166 Md. 519, 529, 530, 172 A. 75; *People's Bank v. Turner,* 169 Md. 430, 182 A. 314; *Union Trust Co. v. Mullineaux,* 173 Md. 124, 194 A. 823; and see *Littig v. Mt. Calvary Church,* 101 Md. 494, 496, 61 A.

635; *Milholland v. Whalen,* 89 Md. 212, 215, 216, 43 A. 43; *Jones v. Clifton,* 101 U. S. 225, 230, 25 L. Ed. 908.

Under these facts and circumstances, and in the entire absence of any fraudulent conduct by the husband and wife, there is no sound reason or precedent to permit the attachments at once to nullify the wife's right of withdrawal of the funds at her election and to destroy a valid and subsisting trust for the benefit of not only the husband, the judgment debtor of the attaching creditor, but also of the wife, who is not a debtor and against whom the attaching creditor has no demand.

The decisions and authorities cited in support of the position of the judgment creditor have been examined, but they are distinguishable because of differences in facts which require the enforcement of other principles than those which control the instant case.

*Judgment affirmed, with costs to the appellee.*