WARREN H. BELCHER ET UX. *v.* GOVERNMENT
EMPLOYEES INSURANCE COMPANY

[No. 110, September Term, 1977.]

*Decided June 19, 1978.*

The cause was argued before MURPHY, C. J., and SMITH,
DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*Ferdinand J. Mack* for appellants.

*James S. Wilson,* with whom were *Brault, Graham, Scott & Brault* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

The present case requires this Court to determine whether, in line with the controversial procedure first announced in 1966 by the New York Court of Appeals in *Seider v. Roth,* 17 N.Y.2d 111, 216 N.E.2d 312, 269 N.Y.S.2d 99, the courts of this State may acquire jurisdiction in a personal injury action by attaching the obligations an insurance company has to an absent defendant as a policyholder under an automobile liability insurance contract. After careful consideration of the divergent opinion presented by counsel and the numerous courts and commentators who have addressed this issue, we have concluded that it would be improper to allow garnishment procedures directed to an insurer to be used by a plaintiff for the purpose of obtaining jurisdiction over a defendant-insured. Accordingly, we will affirm the judgment of the Circuit Court for Montgomery County (Clapp, J.) quashing the writ of attachment by way of garnishment which had been served upon respondent Government Employees Insurance Company (GEICO).

Not surprisingly, the action which has prompted our consideration of the propriety of permitting such an attachment is based on factual circumstances not unlike those which were present in *Seider* and which have caused other courts to consider the correctness of that ruling. In mid-July of 1975 petitioner Warren Belcher was driving an automobile which was involved in a three-car chain reaction collision at an intersection in Langley Park, Maryland. The accident occurred when an automobile driven by Roger Norman Hall collided with the rear end of a second vehicle which was in turn propelled into the back end of Mr. Belcher's car. When settlement negotiations with Roger Hall's automobile insurance carrier — GEICO — failed, Mr. Belcher and his wife filed suit against Hall in the Circuit Court for Montgomery County claiming $150,000 in damages. The Belchers, acting pursuant to the Maryland Rules, sought to

obtain personal service of process upon Roger Hall, but the summons was returned non est. Subsequent attempts to find Mr. Hall by way of a locator service and to gain his new address from GEICO were also unsuccessful. As a result, and concededly somewhat in desperation, the petitioners resorted to the use of the attachment procedures which have become the central concern of this appellate litigation.

After amending their declaration to reduce the amount of the ad damnum clause to $20,000, the statutory minimum required for automobile insurance in Maryland, Md. Code (1977), § 17-103 (b) of the Transportation Article, the petitioners, acting pursuant to Maryland Rule G40, obtained the issuance of an attachment on original process directed toward Mr. Hall's policy with GEICO. When the circuit court by order quashed the attachment writ and ordered judgment entered in favor of GEICO, the petitioners appealed. We issued the requested writ of certiorari before consideration of the matter by the Court of Special Appeals.

Attachment proceedings, which find their roots in this State's right to subject all property within its borders to its laws, *Coward v. Dillinger,* 56 Md. 59, 60-61 (1881), serve the purpose, among others, of insuring the just payment of debts by affording creditors the opportunity to seize the property of a debtor who cannot be reached by service of process because of nonresidence or flight. *Gill v. Physicians' Etc. Building,* 153 Md. 394, 404, 138 A. 674, 677-78 (1927). Since the court's authority in attachment proceedings is derived from a "special and limited statutory power," *Cole v. Randall Park Holding Co.,* 201 Md. 616, 623, 95 A. 2d 273, 277 (1953); *see Northwestern N. Ins. v. Wetherall,* 267 Md. 378, 384, 298 A. 2d 1, 5 (1972); *Killen v. American Casualty,* 231 Md. 105, 108, 189 A. 2d 103, 105-06 (1963), our analysis of whether those proceedings can be applied in this case must focus on a consideration of the relevant legislative provisions. Of primary concern is section 3-302 of the Courts Article, Md. Code (1974), which provides:

> A court of law including the District Court, within the limits of its jurisdiction, may issue an attachment

or original process against any property or credits, whether matured or unmatured, belonging to the debtor upon the application of a person who has the right to become a plaintiff in an action in the state.

For similar provisions, see Maryland Rule G40; see also Md. Code (1974), § 3-305 of the Courts Article.

The petitioners here seek to establish that GEICO possesses "property or credits" belonging to the absent Mr. Hall which are evidenced by certain provisions of the standard automobile insurance policy issued to him by GEICO; those provisions, they assert, create attachable obligations running from the insurance company to its insured.[1] More specifically, they contend that "the obligation

---

1. The pertinent parts of the insurance policy in question here provide:

### PART I — LIABILITY

* * *

To pay on behalf of the insured all sums which the insured shall become *legally obligated* to pay as damages because of:

A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by any person;

B. injury to or destruction of property, including loss of use thereof, hereinafter called "property damage";

arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and *the company shall defend any suit* alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient.

* * *

### CONDITIONS

* * *

6. Action Against Company — Part I: *No action shall lie against the company unless*, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, *nor until the amount of the insured's obligation to pay shall have been finally determined* either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

of the garnishee [GEICO] to indemnify its assured for any judgment [petitioners] obtain, and [GEICO's] obligation to provide a defense to the claim against the assured sufficiently constitute an asset within the definition of § 302 as to permit this attachment. . . ." As support for this proposition, they direct our attention to the decision of the New York Court of Appeals in *Seider v. Roth, supra,* the reasoning of which, they contend, requires a similar result in the case we now consider.

In *Seider,* in order to obtain damages for injuries sustained in a three-car accident in Vermont, two New York residents sought to use a theory identical to that of the petitioners here to attach the automobile insurance policy of one of the other drivers, a Canadian, with an insurer doing business in New York. 216 N.E.2d at 313, 269 N.Y.S.2d at 100. The New York Court of Appeals, interpreting the provisions of that state's attachment statute, found the policy to be a "debt" as that term was used in the statute and thus subject to attachment. 216 N.E.2d at 314, 269 N.Y.S.2d at 101. While the *Seider* rationale has been followed in two other jurisdictions, *Savchuk v. Rush,* Minn., 245 N.W.2d 624, 629 (1976), *vacated,* 433 U. S. 902, 97 S. Ct. 2964, 53 L.Ed.2d 1086 (1977) (remanding for reconsideration in light of *Shaffer v. Heitner,* 433 U. S. 186, 97 S. Ct. 2569, 53 L.Ed.2d 683 (1977)); *Forbes v. Boynton,* 113 N. H. 617, 313 A. 2d 129, 133 (1973), on the whole it has received a decidedly cold reception from courts and commentators,[2] although the United States Court of

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured or his legal representative. [Emphasis supplied.]

2. *E.g.,* Kirchman v. Mikula, 443 F. 2d 816, 817 (5th Cir. 1971) (per curiam) (applying Louisiana law); Sykes v. Beal, 392 F. Supp. 1089, 1093-97 (D. Conn. 1975) (applying Connecticut law); Javorek v. Superior Court of Monterey County, 17 Cal. 3d 629, 552 P. 2d 728, 735 n. 7, 741, 131 Cal. Rptr. 768, 775 n. 7, 778 (1976) (rejecting *Seider,* citing state and federal authority from Vermont, Washington, Oklahoma, Louisiana, Missouri, South Carolina, Rhode Island, Utah, and Pennsylvania); Savchuk v. Rush, Minn., 245 N.W.2d 624, 630 n. 11 (1976) (citing commentators criticizing *Seider),* *vacated,* 433 U. S. 902, 97 S. Ct. 2964, 53 L.Ed.2d 1086 (1977); Hart v. Cote, 145 N.J. Super. 420, 367 A. 2d 1219, 1222 (Law Div. 1976).

Appeals for the Second Circuit has twice upheld its constitutionality. *Minichiello v. Rosenberg,* 410 F. 2d 106 (2d Cir. 1968), *aff'd en banc,* 410 F. 2d 117, *cert. denied,* 396 U. S. 844 (1969); *O'Connor v. Lee-Hy Paving Corp.,* 47 U.S.L.W. 2007 (2d Cir. June 12, 1978) (reaffirming constitutionality of *Seider* procedure in light of recent Supreme Court decision in *Shaffer v. Heitner, supra,* which declared that exercise of in rem and quasi-in-rem jurisdiction would now be governed by minimum contacts standard of *International Shoe Co. v. Washington,* 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). See, however, *Farrell v. Piedmont Aviation, Inc.,* 411 F. 2d 812, 817 (2d Cir.) (constitutional doubt with respect to applying *Seider* in favor of nonresident plaintiffs would be "exceedingly serious"), *cert. denied,* 396 U. S. 840 (1969). *See generally* Annot., 33 A.L.R.3d 992 (1970) (collecting cases on potential liability of insurer as subject of attachment). Though within the last year the New York court has limited the availability of *Seider*-type attachments to resident plaintiffs, that court, while noting the widespread criticism of *Seider,* specifically declined to re-examine the underlying rationale of that case on the basis of stare decisis and the fact that the legislature had made no move in the eleven years since the decision to nullify or change its effect. *Donawitz v. Danek,* 42 N.Y.2d 138, 366 N.E.2d 253, 255-56, 397 N.Y.S.2d 592, 594-95 (1977).

Just as the decision in *Seider* depended on an interpretation of New York's attachment statute, so does our disposition of this case depend on a proper construction of the Maryland enactment. Determinative of our conclusion in this case that GEICO's obligation to the absent defendant under its contract of insurance may not be attached is the long-established principle that where an interest is uncertain and contingent — in that it may never become due and payable — it is not subject to attachment as not within the scope of Maryland's attachment statute. *See Fairfax v. Savings Bank,* 175 Md. 136, 141, 199 A. 872, 875 (1938); *Safe D. & T. Co. v. Ind. Brewing Asso.,* 127 Md. 463, 468-69, 96 A. 617, 619 (1916); *Suskin & Berry v. Rumley,* 37 F. 2d 304, 306 (4th Cir. 1930) (interpreting Maryland law). In *Fairfax,* with

the attachment statute reading substantially the same as it does today, we considered whether a husband's interest in a trust was attachable, and concluded:

> By the plain language of the declaration of trust the interest of the husband in the corpus of the trust is contingent upon his survival of his wife. So, the interest is uncertain and contingent in the sense that none of the deposit or trust may ever become due and payable to the husband. Such an interest is not subject to attachment as it is not within the scope of [the attachment statute, Code (1924), Art. 9, § 10]. The language of the court in *Safe Deposit & Trust Co. v. Independent Brewing Assn.,* 127 Md. 463, [468, 96 A. 617, 619], is particularly applicable and may be quoted:
>
> "While the language of Code [1912], art. 9, sec. 10, is very broad, and provides that any kind of property or credits belonging to the defendant, in the plaintiff's own hands, or in the hands of any one else, may be attached, it has never been held that it would apply or cover a contingent or uncertain interest in a trust estate such as the one here in dispute." [175 Md. at 141, 199 A. at 875.]

It is apparent that this principle is dispositive of the petitioners' contentions, since both contractual obligations which are the subject of the attachment — the duty to indemnify the insured for any judgment rendered against him and the obligation to defend him in any suit seeking damages payable under the policy — are mere contingencies.[3]

---

3. Perhaps the clearest way to illustrate the nature of a contingent interest is to examine the distinction between such an interest and one which is simply unmatured but nevertheless is subject to attachment. In the case of an interest of the latter type, while it is true that the amount of the garnishee's liability may be somewhat uncertain, there is no question about the fact of liability. A contingent interest, on the other hand, is one in which liability is not certain and absolute, but depends on some independent event. *See* Javorek v. Superior Court of Monterey County, 17 Cal. 3d 629, 552 P. 2d 728, 737, 131 Cal. Rptr. 768, 777 (1976). That the General Assembly has recognized this distinction and limited the scope of section 3-302 of the Courts Article, Md. Code (1974), is obvious, for that section provides for the attachment of unmatured interests without any mention of those which are contingent.

Looking to the first of these obligations — GEICO's duty to indemnify its insured — we find that the contract of insurance between the parties specifically provides that the obligation to indemnify arises only *after* a judgment is rendered against the insured. The petitioners' theory, however, would permit a court to assert jurisdiction and attach the purported obligation *before* any judgment — in order to enable the court to then render a judgment which is in fact the only event which can create the obligation in the first place. To recognize this duty of indemnification as anything other than contingent, and hence not attachable, would surely be to turn logic on its head. This bootstrap approach also underlies the petitioners' contention that GEICO's duty to defend its insured is attachable, even though clearly the obligation does not arise unless and until litigation is properly instituted against the insured with service of process upon him requiring him to respond. Thus "[t]he existence of the policy is used as a sufficient basis for jurisdiction to start the very action necessary to activate the insurer's obligation under the policy. In other words, the promise to defend the insured is assumed to furnish the jurisdiction for a civil suit which must be validly commenced before the obligation to defend can possibly accrue." *Seider v. Roth,* 17 N.Y.2d 111, 216 N.E.2d 312, 315, 269 N.Y.S.2d 99, 103 (1966) (Burke, J., dissenting).[4] In reality, the *Seider*

---

4. Even if we were to accept the petitioners' contention that the duty of GEICO to defend is sufficiently certain to permit that obligation to be attached, other reasons exist which bar attachment here. Under the insurance policy GEICO is only required to provide the services incident to Mr. Hall's legal defense and need not provide him with separate funds to conduct his defense independently. The policy creates an obligation to provide personal services; that obligation, being personal, is not transferable and consequently not attachable. Javorek v. Superior Court of Monterey County, 17 Cal. 3d 629, 552 P. 2d 728, 740, 131 Cal. Rptr. 768, 780 (1976); *see* Pope v. Safe Dep. & Tr. Co., 163 Md. 239, 246, 161 A. 404, 407 (1932) (creditors of an appointor cannot attach property which is subject to his power of appointment); Sill v. White, 62 Conn. 430, 26 A. 396, 397 (1892) (right granted to husband by wife's will to sell life estate for personal needs created unattachable personal right in life estate); In re Fleming's Estate, 217 Pa. 610, 66 A. 874, 876 (1907) (right of election under a will is personal and not attachable); Cleveland Nat. Bank v. Morrow, 99 Tenn. 527, 42 S. W. 200, 201 (1897) (power to select scholarship recipient is personal privilege not subject to attachment). Further, valuation of the duty to defend is a practical impossibility, for its true worth can only be determined at the end of the litigation — at which point the obligation ceases to exist because it has been

analysis is a classic example of the tail wagging the dog, a bit of wizardry in which we decline to engage.

Our decision today is not rendered without cognizance of the petitioners' strong public policy arguments in favor of allowing suits against insurers in situations similar to the one presented in this case. There is more than a modicum of appeal in their contention that the General Assembly's action in setting up a system of compulsory automobile insurance, Md. Code (1977), §§ 17-101 to -301 of the Transportation Article, indicates its growing belief that all those injured while using the highways of this State should be properly recompensed. Furthermore, citizens of Maryland will have to bear the brunt of the expense when the injured are forced to rely on public aid for support due to their loss of employment and concomitant inability to pay medical bills incurred as a result of their injuries — even though the insurer has collected his fees to pay for just such occurrences and very likely has set up a reserve fund containing all the money necessary to reimburse the injured parties. Persuasive as these arguments may be, however, they do not give us leave to misconstrue this State's attachment statute to allow what, in fact, would be a direct action against insurers which the General Assembly has not seen fit to permit. *See State v. Arundel Park Corp.,* 218 Md. 484, 487, 147 A. 2d 427, 428 (1959); *Gorman v. St. Paul Fire Ins. Co.,* 210 Md. 1, 5, 121 A. 2d 812, 815 (1956); *Complaint of Harbor Towing Corporation,* 335 F. Supp. 1150, 1155 (D. Md. 1971); *cf.* Md. Code (1957, 1972 Repl. Vol.), Art. 48A, § 481. *But see Kirchen v. Orth,* 390 F. Supp. 313, 319 (E.D. Wis. 1975) (allowing direct action against insurer without benefit of statutory authority). We will therefore affirm the order of the circuit court quashing the writ of attachment and entering judgment for costs in favor of the respondent.

*Judgment affirmed.*
*Costs to be paid by petitioners.*

---

fulfilled, leaving no other res which can be attached. Javorek v. Superior Court of Monterey County, *supra,* 552 P. 2d at 740, 131 Cal. Rptr. at 780; *cf.* Safe D. & T. Co. v. Ind. Brewing Asso., 127 Md. 463, 469, 96 A. 617, 619 (1916).